IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLA LAVON BROWN                    *

    Plaintiff,                   *

v.                                   *        Civil Action No. BPG-09-2327

MICHAEL J. ASTRUE,                   *
Commissioner of
Social Security,                     *

    Defendant.                   *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM

    Plaintiff, Carla Lavon Brown, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (ECF Nos. 16, 24.) These motions have been referred to the undersigned with the parties' consent, pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

## I.  **Background**

On May 18, 2005, plaintiff Carla Lavon Brown filed a claim for a period of disability and disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI").  (R. at 70-79, 93.)  Plaintiff alleged that she became disabled on May 1, 2005 due to severe lower back pain.  (R. at 97.)  After plaintiff's application was denied initially and upon reconsideration (R. at 35-38, 42-45), plaintiff appeared for a hearing before Administrative Law Judge ("ALJ") Clay G. Guthridge on May 2, 2006 (R. at 317-54).  In a decision dated August 12, 2006, ALJ Guthridge denied plaintiff's application for benefits. (R. at 18-25.)

On August 6, 2007, the Appeals Council held that there was no basis for granting review of the ALJ's decision.  (R. at 6-8.) On June 5, 2007, plaintiff petitioned this court for judicial review, and on August 12, 2008, Judge Gauvey issued an order remanding the case to the Commissioner for further proceedings consistent with her opinion.  (R. at 397-438.)  Judge Gauvey found that ALJ Guthridge did not explain his decision to afford little weight to the medical opinion of plaintiff's treating physician, Dr. Doshi, did not properly assess plaintiff's credibility as to the severity of her pain, and failed to properly evaluate plaintiff's obesity in determining the severity of her impairments. (Id.)

Meanwhile, plaintiff had filed a second application for DIB and SSI on October 4, 2006, alleging a disability onset date of August 13, 2006. (R. at 533-37, 540-43.) After this application was also denied initially and upon reconsideration (R. at 499-502, 505-09, 511-15), plaintiff appeared for a hearing before ALJ Melvin D. Benitz on May 8, 2008 (R. at 935-57). ALJ Benitz denied plaintiff's application for benefits in a decision dated June 9, 2008. (R. at 387-95).

Plaintiff filed a third application for DIB and SSI on June 24, 2008 (R. at 792-99, 826), which was again denied initially and upon reconsideration (R. at 764-74). On October 20, 2008, the Appeals Council vacated the August 12, 2006 and June 9, 2008 ALJ decisions and consolidated all three of plaintiff's applications. (R. at 441-42.) On March 19, 2009, plaintiff appeared for a remand hearing before ALJ Benitz. (R. at 958-76.) Plaintiff was represented at the hearing by Monique Lee, Esq. (Id.) In a decision dated July 1, 2009, ALJ Benitz denied plaintiff's claim for benefits.[1] (R. at 359-74.)

Plaintiff now petitions this court for summary judgment reversing the ALJ's July 1, 2009 decision and awarding plaintiff the benefits she has requested. (ECF No. 16.) Alternatively,

---

[1] While the Appeals Council's denial of review of ALJ Benitz's July 1, 2009 decision does not appear in the record, "the Commissioner has acknowledged that this Court has subject matter jurisdiction to review the Commissioner's final decision in this case." (Def.'s Mem., ECF No. 24-1 at 2.)

plaintiff requests that this court remand the matter to the Social Security Administration for further proceedings. (Id.)

## II.  **Standard of Review**

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five-step analysis. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987).

> (1)  The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is

not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant is not capable of other work, the claimant is disabled.

## III. **Discussion**

In her memorandum in support of her motion for summary judgment, plaintiff argues that the ALJ did not comply with Judge Gauvey's August 12, 2008 remand Order. (ECF No. 16-1 at 5-9.) Specifically, plaintiff claims that the ALJ: (1) did not properly evaluate the medical source opinions of Dr. Kurup, Dr. Barrish, Dr. Doshi, and Dr. Parmar; (2) did not apply the correct standard in assessing plaintiff's credibility; and (3) did not properly consider plaintiff's obesity. (Id.) In addition, plaintiff challenges the ALJ's hypothetical question to the vocational expert ("VE") as "inconsistent with the impairments

5

found to be severe and inconsistent with Dr. Barrish's pRFC."
(Id. at 10-11.)

**A. <u>The ALJ's Evaluation of the Medical Source Opinions</u>**

Plaintiff challenges the ALJ's reliance on the medical source opinion of Dr. Ajit Kurup, M.D., who conducted a consultative physical examination of plaintiff on January 20, 2007 at the request of the Maryland Disability Determination Services ("DDS"). (R. at 705.) Dr. Kurup observed that plaintiff ambulated "with moderate difficulty" but did not require an assistive device. (R. at 706.) Dr. Kurup also noted that plaintiff "had some difficulty getting on and off the examination table," as well as moderate difficulty getting dressed and undressed. (R. at 706-07.) Dr. Kurup noted that a "straight leg raising test was strongly positive at 30 degrees bilaterally." (R. at 707.) Dr. Kurup found that plaintiff had "significant difficulty lying flat on the examination table," moderate difficulty walking on her heels and toes, and "severe difficulty squatting." (Id.) Dr. Kurup concluded that plaintiff "is not in a position to perform jobs that require mild to moderate exertion of her lower back" (Id.)

Plaintiff claims that the ALJ "tried to create a pRFC [physical residual functional capacity] out of thin air" for Dr. Kurup and that Dr. Kurup "expressed no discernible medical opinion." (ECF No. 16-1 at 5, 7.) The Commissioner responds

6

that "the ALJ never implied that Dr. Kurup issued an RFC" and asserts that Dr. Kurup's assessment constituted a medical opinion, upon which the ALJ properly relied as consistent with Dr. Kurup's observations of plaintiff during her examination. (ECF No. 24-1 at 13.)

Plaintiff's argument that the ALJ "created a pRFC out of thin air" for Dr. Kurup is unavailing. The Agency regulations define residual functional capacity as "the most [a claimant] can do despite [his or her] limitations . . . based on all the relevant evidence in [the] record." 20 C.F.R. § 404.1545(a). Medical opinions, on the other hand, "are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), . . . and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Kurup's conclusion that plaintiff "is not in a position to perform jobs that require mild to moderate exertion of her lower back" reflects Dr. Kurup's judgment as to the nature and severity of plaintiff's back pain, specifically her physical restrictions as a result of such pain and, accordingly, constitutes a "medical" opinion within the meaning of 20 C.F.R. § 404.1527(a)(2).

In addition to challenging the ALJ's reliance on the

consultative examiners,[2] plaintiff also argues that the ALJ did
not evaluate the medical opinions of her treating physicians in
accordance with this court's August 12, 2008 remand Order.  A
treating physician's medical opinion will be given controlling
weight if it is "well-supported by medically acceptable clinical
and laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in [the] record."  20 C.F.R. §
404.1527(d)(2); Craig v. Chater, 76 F.3d 585, 590 (4th Cir.
1996).  If the ALJ determines that a treating physician's opinion
is not entitled to controlling weight, the ALJ must determine
what weight, if any, to give that opinion and give "good reasons"
for that decision.  20 C.F.R. § 404.1527(d)(2).  In determining
how much weight to give a medical opinion, the ALJ should
consider (1) the length of the treatment relationship and
frequency of examination, (2) the nature and extent of treatment,
(3) the evidence supporting the opinion, (4) the consistency of
the opinion with the record as a whole, and (5) the physician's
specialization.  20 C.F.R. § 404.1527(d)(1-6).

In her remand Order, Judge Gauvey held that the ALJ failed
to fully explain his decision to afford plaintiff's treating

---

[2] Plaintiff's argument that the ALJ's hypothetical question
to the VE was not consistent with consultative examiner Dr.
William Barrish's medical opinion (ECF No. 16-1 at 5) is
discussed in § II.E, infra.

8

physician, Dr. Nehal Doshi, M.D., less than controlling weight.[3]

(R. at 414-24.)  Judge Gauvey found that the ALJ failed to
evaluate the consistency of Dr. Doshi's opinion with the record,
did not address whether Dr. Doshi's findings were supported by
the laboratory and medical evidence, and failed to consider the
nature and extent of Dr. Doshi's treatment of plaintiff.  (R. at
416.)  Judge Gauvey instructed the ALJ to properly evaluate Dr.
Doshi's opinion on remand according to the factors articulated in
the Agency regulations.

Plaintiff suggests that the ALJ did not comply with the
remand Order in evaluating Dr. Doshi's medical opinion.[4]  (ECF
No. 16-1 at 5-6.)  The Commissioner responds that the ALJ
explained his decision to accord Dr. Doshi's opinion less than
controlling weight and properly applied the criteria in 20 C.F.R.
§ 404.1527(d).  (ECF No. 24-1 at 14-15.)

---

[3] Dr. Doshi completed a Medical Assessment of Ability to do
Work-Related Activities (Physical) on April 18, 2006, in which he
found that plaintiff could lift three pounds, stand and/or walk
for 10-15 minutes, sit for a half hour without interruption and
one hour total, occasionally climb, balance, stoop, kneel, or
crawl but could never crouch, is limited in her ability to push
and pull, and has an environmental restriction of no vibration.
(R. at 309-11.) The VE who testified at plaintiff's initial
hearing found that no jobs existed in the local or national
economy for an individual with functioning as limited as that
described by Dr. Doshi.  (R. at 350-52.)

[4] While plaintiff does not expressly argue that the ALJ
erred in assessing Dr. Doshi's opinion on remand, the
Commissioner responded to this argument in his motion, so the
court will address it.

The ALJ adequately explained his decision to afford Dr. Doshi's decision less than controlling weight. The ALJ stated that, while he recognized that Dr. Doshi was a treating physician, he declined to give Dr. Doshi's opinion controlling weight, "as it is not well supported by the medical signs and laboratory findings" and "is inconsistent with other substantial evidence of record." (R. at 370.) The ALJ noted that Dr. Doshi's assessment of plaintiff's limitations was based solely on plaintiff's pre-surgical May 2005 MRI. (Id.) The ALJ further explained that Dr. Doshi's opinion was inconsistent with the contemporaneous treatment records of plaintiff's other treating physicians, Dr. Malik, Dr. Fox, and Dr. Nateson,[5] "which consistently revealed no neurological deficits."[6] (Id.) While

---

[5] The court notes that, while this misstatement is not a basis for a remand, Dr. Nateson did not treat plaintiff contemporaneously with Dr. Doshi. Dr. Nateson was plaintiff's primary care physician and last treated her in 2005, before her surgery.

[6] Dr. Malik reviewed plaintiff's post-operative May 9, 2006 MRI, which "revealed minor degenerative disc disease and adequate fusion." (R. at 357.) Plaintiff saw Dr. Malik's Nurse Practitioner, Mary Ryan, on July 14, 2006, who reported that plaintiff's lumbar spine was "nontender to palpitation," muscle strength and range of motion were normal, and a "straight leg raise test was negative bilaterally." (R. at 657.) On August 25, 2006, Ryan reported "trigger point tenderness" in the lumbar spine, a straight leg raise test was positive on the left, but muscle strength and range of motion remained within normal limits. (R. at 653.) Dr. Fox, who treated plaintiff for pain management on March 30, 2007, reported that, while plaintiff complained of increased pain and had some "diffuse tenderness" in the lower back, her gait and strength were normal and her neurologic examination revealed "no areas of decreased

the ALJ did not expressly address the nature and extent plaintiff's treatment relationship with Dr. Doshi, the ALJ noted that Dr. Doshi had not seen plaintiff since April 13, 2006 and earlier in his opinion, discussed the only two records of Dr. Doshi's treatment of plaintiff:  on February 23, 2006, Dr. Doshi reported that plaintiff "feels well" and that her "physical examination was within normal limits," and on April 13, 2006, Dr. Doshi reported that plaintiff's "physical examination was unremarkable."  (R. at 367-68, 370.)  In short, the ALJ's decision to afford Dr. Doshi's opinion less than controlling weight was supported by substantial evidence.

Plaintiff also contends that the ALJ did not properly evaluate the medical opinion of Dr. Mandip Parmar, M.D., a pain management specialist who began treating plaintiff in May 2007. (ECF No. 16-1 at 6-7.)  Dr. Parmar completed a Medical Assessment of Ability to do Work-Related Activities (Physical) for plaintiff on April 16, 2008, and a second one on February 13, 2009.  (R. at 734-36, 485-87.)  According to the VEs who testified at plaintiff's May 8, 2008 and March 19, 2009 hearings, plaintiff's limitations as described by Dr. Parmar would have eliminated all hypothetical work in the national economy.  (R. at 956, 975.) The Commissioner responds that the ALJ explained his decision to afford Dr. Parmar's opinions little evidentiary weight.  (ECF No.

sensation."

24-1 at 15-16.)

The ALJ adequately explained his decision not to give Dr. Parmar's assessments controlling weight, noting that Dr. Parmar's decision was not supported by the medical and laboratory evidence and was inconsistent with the overall record, including his own treatment notes. (R. at 370-71.) Specifically, the ALJ noted, and the record reveals, that Dr. Parmar cited no medical evidence to support his conclusions regarding plaintiff's functional limitations. (<u>Id.</u>) In addition, the ALJ cited to Dr. Parmar's progress notes from plaintiff's monthly visits spanning the period from July 13, 2007 through January 29, 2009, which the ALJ concluded "consistently show that plaintiff's back pain was stable."[7] (R. at 371.) Specifically, the ALJ pointed to plaintiff's statements to Dr. Parmar that her pain fluctuated, that she experienced moderate relief with medication, that she "was able to go some days without taking" her medication, and that an onset of severe back pain corresponded with her not taking her medication for two weeks. (<u>Id.</u>) In sum, the ALJ's decision not to accord Dr. Parmar's assessment controlling weight was supported by substantial evidence.

---

[7] Dr. Parmar's clinical impression of plaintiff's lower back pain was marked "stable" on all of the progress notes from her visits during the period from July 13, 2007 to January 29, 2009 (with the exception of an April 16, 2008 progress note, which indicated that plaintiff's pain was "worsening" (R. at 738)). (R. at 471-84, 722-33, 739-48. 921-26.) On August 10, 2007, Dr. Parmar's impression was that plaintiff's pain was "stable" and

## B. **Evaluation of Plaintiff's Credibility**

Judge Gauvey's remand Order directed the ALJ to properly consider plaintiff's credibility concerning her allegations of pain according to the two-step process articulated by the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). This test requires the ALJ to first determine whether there is objective evidence showing the existence of a medical impairment that could reasonably produce the pain alleged. Id. Second, once the ALJ concludes that a claimant has a medical impairment that can reasonably be expected to produce the pain claimed, the ALJ must evaluate the intensity and persistence of claimant's alleged pain based on all the evidence in the record. Id. at 595. Factors to be considered at step two of the credibility analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments and other measures taken for relief; and (6) other factors concerning functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3).

Plaintiff argues that the ALJ contravened the court's remand Order by using a different "truncated" standard to assess plaintiff's credibility. (ECF No. 16-1 at 8-9.) Specifically,

---

"improving." (R. at 723.)

plaintiff criticizes the following statement by the ALJ:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The first sentence of this statement is an accurate reflection of step two of the credibility analysis articulated in Craig. The second sentence is entirely consistent with the Agency regulations at 20 C.F.R. §§ 404.1529 and 416.929, which direct the ALJ to evaluate a claimant's subjective complaints of pain based on the entire case record.[8]

Plaintiff also criticizes the ALJ's statement that "[i]n resolving conflicts in the medical evidence, the undersigned gives greater weight to the claimant's statement made to treating medical sources for the purposes of actual medical treatment than to her self-serving statements at the hearing." (ECF No. 16-1 at 8 (citing R. at 368).) Plaintiff asserts the ALJ's decision to

_____

[8] "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . . In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." 20

give "greater deference to the excited utterances made to treating and examining physicians" was not addressed in the court's remand Order. (Id.) As the Commissioner argues, it is inaccurate to characterize statements made during non-emergent visits to a doctor for treatment as "excited utterances." (ECF No. 24-1 at 18.) Moreover, it was logical for the ALJ to afford "more weight to the contemporaneous statements [plaintiff] made to her doctors for the purpose of treatment than to her self-serving statements at the hearing." (Id.)

A review of the ALJ's opinion reveals that he properly addressed each of the factors at step two of the credibility analysis. As to the first factor, the claimant's daily activities, the ALJ stated that on a typical day, plaintiff "takes a shower, eats breakfast, and just lies in her bedroom," and that she "walks around" and "watches television or reads." (R. at 366.) He also stated that she "goes out with a friend" and "attends religious services once or twice a month" but is "unable to sit throughout the two-hour service." (Id.) The ALJ also noted that plaintiff straightens up her room and cleans up after herself, washes dishes, prepares light meals, and "drives locally for errands" but "has trouble driving long distances or taking a bus due to the shaking." (Id.) The ALJ further noted that during her post-operative physical therapy, plaintiff stood

---

C.F.R. §§ 404.1529(a) and 416.929(a).

at an auction and attended a party. (R. at 369.) The ALJ determined that plaintiff's ability to perform these activities was "inconsistent with her complaints of severe and unrelenting pain and significant functional limitations." (Id.)

As to the location, duration, frequency, and intensity of plaintiff's pain, the ALJ described how plaintiff's lower back pain "feels like a pressure or heaviness" and that "[i]f she sits for too long, it feels like a ball of pain which travels down her hips into her buttocks, legs, and thighs." (R. at 366.) The ALJ explained that plaintiff occasionally experiences a "stabbing pain" in her hips that is "constant" and a "burning pain" in her hips that "occurs a couple of times a week." (Id.) The ALJ further noted that plaintiff's "pain level was 8/10" before her last hearing "but is now off the meter." (Id.)

The ALJ also acknowledged precipitating or aggravating factors of sitting, standing, and walking, as well as "lying flat on her back too long" and lying on her right side. (Id.) As to medications, the ALJ stated that plaintiff was taking Ultram and Flexeril and noted that "[p]ain medications help her neck, but do not help her back." (Id.) The ALJ noted that while plaintiff claims to experience drowsiness from her pain medications, there is no evidence in the record that she reported any significant side effects to her doctors. (R. at 369). The ALJ further noted that plaintiff presented no evidence of impairment in cognitive

16

functioning as a result of her medications. (Id.) The ALJ
considered treatment and other measures plaintiff has taken for
relief when he observed that plaintiff "underwent back surgery in
October 2005" and "has received physical therapy and injections,
with no relief." The ALJ also stated that plaintiff has "tried
heating pads and ice backs" to alleviate her pain "but nothing
really helps." (R. at 366.)

In reviewing the ALJ's decision, it should be noted that it
is not the court's role in reviewing for substantial evidence to
re-weigh conflicting evidence, make credibility determinations,
or substitute its judgment for that of the ALJ. Craig v. Chater,
76 F.3d 585, 589 (4th Cir. 1996). Based on the above, the
undersigned finds that the ALJ considered and applied each of the
requisite step two factors and concluded that "the record does
not disclose significant or persistent findings consistent with
[plaintiff's] subjective allegations of disabling pain or
significant functional limitations." (R. at 369.)

Plaintiff takes issue with the ALJ's failure to mention her
good work record. (Id. at 9 (citing 20 C.F.R. § 404.1529(c)(3);
Steffanick v. Heckler, 570 F. Supp 420 (D. Md. 1983) (claimant's
statements concerning his pain "should not be disregarded
lightly" where he has a substantial record).) CFR §
404.1529(c)(3) states that "[w]e will consider all of the
evidence presented, including information about your prior work

17

record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons." Accordingly, while the ALJ did not expressly note plaintiff's work history in assessing her credibility, the ALJ stated in his opinion that plaintiff had past relevant work as a corrections officer, telemarketer, and office clerk, which suggests that he was aware of plaintiff's work history. (ECF No. 24-1 (citing R. at 373).) Moreover, a claimant's work history is only one factor among many to be taken into consideration. As discussed above, the ALJ addressed each of the other factors set forth in the regulations for assessing plaintiff's credibility. In addition, the Steffanick case cited by the plaintiff is readily distinguishable from the instant case in that there, the plaintiff's complaints of pain were supported by direct, uncontradicted medical evidence and the need for major surgical procedures, and the ALJ had based his credibility determination in part on an improper "sit and squirm" test. Steffanick, 570 F. Supp. at 426-27. In sum, the ALJ's conclusion as to plaintiff's credibility regarding her complaints of pain was supported by substantial evidence and consistent with the court's remand Order.

## C. **The ALJ's Evaluation of Plaintiff's Obesity**

Plaintiff also asserts that the ALJ's evaluation of her obesity contravened the court's remand Order, which directed the

18

ALJ to consider the effects of plaintiff's obesity on her condition. (ECF No. 16-1 at 9.) Specifically, plaintiff claims that, while the ALJ acknowledged that plaintiff's obesity was severe, he did not properly apply the criteria in SSR 02-1p, which requires that more consideration be given to a claimant's weight where, as here, a weight-bearing joint is involved. (Id.) The Commissioner responds that plaintiff failed to discharge her burden of proving any additional limitations that the ALJ failed to identify that are attributable to plaintiff's obesity. (ECF No. 24-1 at 20-21 (citing Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (plaintiff bears burden of production and proof at first four steps of five-step disability analysis).)

The ALJ properly considered plaintiff's obesity, including its effects in combination with plaintiff's other impairments. The ALJ found that, while plaintiff's obesity was a severe impairment, "it does not prevent [plaintiff] from ambulating effectively or breathing properly" and no evidence suggests that it has limited plaintiff's gross or fine motor movements. (R. at 369.) The ALJ found that there are "no medical conditions associated with [plaintiff's] obesity" and "[n]o physician has indicated that weight loss would ameliorate her symptoms" or otherwise advised her to lose weight. (Id.) In sum, the ALJ's conclusion that the cumulative effect of plaintiff's obesity and other impairments did not limit her ability to work was supported

by substantial evidence.

**D.    The ALJ's Inclusion of Nonexertional Limitations in Plaintiff's RFC**

The ALJ found that plaintiff was limited to jobs that are "simple, routine, and unskilled, with low stress, low memory, and low concentration" and "are classified as SVP[9] 1 or 2."  (R. at 365.)  Plaintiff argues that it is unclear which of her impairments warranted the inclusion of these nonexertional limitations in the ALJ's RFC.  (ECF No. 16-1 at 10.)

As the Commissioner argues, the inclusion of these limitations in plaintiff's RFC is consistent with Dr. Barrish's finding that, while plaintiff's "cognition was within normal limits," "taking narcotic pain medications might affect her higher level of cognitive functioning."  (ECF No. 24-1 at 21; R. at 371.)  Moreover, these limitations flow naturally from plaintiff's complaints of disabling pain and, if anything, "accrue to her benefit" because they limit her to less demanding work.  (ECF No. 24-1 at 21.)  As the ALJ's finding of these limitations is supported by evidence in the record, and as plaintiff has alleged no harm as a result of the ALJ's purported error, there is no basis for remand on this issue.

_____

[9] SVP refers to "Specific Vocational Preparation," which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (DOT)

## E. **The ALJ's Hypothetical Question**

Plaintiff argues that the ALJ's hypothetical question was not consistent with the medical opinion of consultative examiner Dr. William Barrish, M.D., which the ALJ afforded considerable weight in determining plaintiff's RFC. (R. at 371.) Dr. Barrish found that plaintiff could "occasionally" crawl, crouch, and stoop. (R. at 910.) Plaintiff argues that the ALJ's hypothetical question to the VE who testified at plaintiff's hearing did not include any postural limitations. (ECF No. 16-1 at 5.) As defendant argues, however, there is no error in the ALJ's omission because none of the occupations the VE identified as suitable for an individual with plaintiff's limitations require a worker to perform any postural activities. (ECF No. 24-1 at 22 (citing Dictionary of Occupational Titles (DOT) §§ 209.587-010 (addresser); 209.567-014 (food and beverage order clerk); 017.684-010 (taper, printed circuit layout) (4th rev. ed. 1991)).)

Plaintiff also complains that Dr. Barrish's statement that plaintiff needs "frequent rest periods" was not clear and was not reflected in the ALJ's hypothetical. (ECF No. 16-1 at 5, 10-11.) Plaintiff is referring to Dr. Barrish's statement in his medical evaluation that plaintiff "could sit for 6 to 8 hours per day, although frequent position changes will be necessary. Standing

Appendix C (4th rev. ed. 1991).

and walking could be done 2 to 4 hours per day and, once again, with frequent rest breaks and position changes." (R. at 910.) Dr. Barrish was opining that plaintiff would need frequent rest breaks from sitting, standing, and walking, which was reflected in the statement in the ALJ's hypothetical that plaintiff could "stand for 30 minutes, sit for 30 minutes, on a consistent basis, on an alternative basis five days a week."[10] (R. at 973.) Accordingly, plaintiff's argument that the ALJ's hypothetical did not comport with Dr. Barrish's opinion as to her limitations is unavailing. In sum, the arguments advanced by plaintiff as to the ALJ's hypothetical question do not warrant a remand.

## IV. **Conclusion**

For the foregoing reasons, the court denies plaintiff's Motion for Summary Judgment (ECF No. 16) and grants defendant's Motion for Summary Judgment (ECF No. 24). A separate order shall issue.


Date: 04/14/2011                          _____/s/_____
                                          Beth P. Gesner
                                          United States Magistrate Judge

---

[10] Plaintiff contends that the word "'frequent' is a term of art in SSA proceedings" that "generally means two thirds of the working day." (ECF No. 16-1 at 10 (citing R. at 915).) Plaintiff cites for this proposition the standard SSA pRFC form, in which the word "frequently" is an option, along with "occasionally" and "never," that a physician may select when assessing a claimant's postural limitations. It is obvious, based on the context of Dr. Barrish's statement, that he was not using "frequent" in this technical manner.